UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

TERESA TRAINOR

v.

STATE OF CONNECTICUT
DEPARTMENT OF CORRECTION

Civil Number 3:02CV1230(AWT)

March 25, 2004

FILED

2004 MAR 29  P 4: 07

U.S. DISTRICT COURT
HARTFORD, CT.

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S SUMMARY JUDGMENT MOTION

### I.  INTRODUCTION

The plaintiff moves this Court to deny the defendant's motion for summary judgment because there are genuine issues of material fact in dispute. The plaintiff, a correctional officer was subjected to demeaning comments and sexually offensive conduct as a female employee of the Department of Correction. The conduct included offensive touching and comments by at least one other correctional officer while on duty and the express statement of another expressing his desire to insert his penis into plaintiff.

The Department of Correction permitted a sexually offensive newsletter to circulate in some of its facilities. In an issue that appeared around October 2001, the plaintiff was defamed as a person who faked an injury in order to collect workers' compensation and who had oral sex with her supervisor.

As a result of the stream of sexually offensive conduct permitted by the department, plaintiff asserts she suffered sex discrimination in a hostile environment condoned by the Connecticut Department of Correction. As a result, the plaintiff suffers and continues to suffer emotional distress.

### II.  BACKGROUND

Plaintiff has been a correctional officer since 1994. Amended Complaint. Trainor dep. 10; Trainor Affidavit ¶ 3. While assigned to the Hartford Correctional Center,

Plaintiff was subjected to demeaning and offensive sexual comments and conduct from male co-workers Marion Baker, Jim Waterman and Dennis Jalbert. Trainor dep. 70-76; Trainor Affidavit ¶ 7, 8, 12, 13. Such conduct included Waterman touching plaintiff's knees and accusing her of having oral sex with her supervisor under the supervisor's desk. Id. Other conduct involved Baker and Jalbert touching my intimate and private parts. Trainor Affidavit ¶ 7, 8.

Plaintiff reported Baker's comments to her supervisor, Captain Todd Case. Trainor dep. 70-72; Trainor Affidavit ¶ 11. Captain Case, however, failed to resolve the matter and stated 'that's just Big Daddy's way' referring to Baker. Id. On other occasions, Plaintiff was touched in the private area, against her will, by male correctional officers. Trainor Affidavit ¶ 7, 8, 13.

The Plaintiff, as well as other female DOC employees, were afraid of reporting sexually harassing conduct. Trainor Affidavit ¶ 14, 15; Commission on Human Rights and Opportunities ("CHRO") Factfinding Report. Sexual harassment is pervasive at DOC. Trainor Affidavit 4; CHRO Report. It was known that DOC failed to discipline individuals who were accused of sexual harassment. Trainor dep; CHRO Report; Trainor Affidavit 11. DOC has threatened to discipline complainants for failing to report harassment on the date it occurred or by conducting an independent investigation of the complainant. Trainor dep; CHRO Report. Early in her career, Plaintiff had been the subject of retaliation as the result of an incident involving a superior officer. Trainor dep; Trainor Affidavit ¶ 5, 6. It was known that DOC had retaliated against complainants who reported sexual harassment. Trainor dep.; CHRO Report; Trainor Affidavit ¶14. Investigators do not always report allegations which, if true, constitute criminal activity. Id. On few occasions, an internal investigation is initiated. The investigations commence only after the employee completes an incident report, which is designed for purposes

other than complaining or reporting discriminatory conduct. CHRO Report.

Around October 2001, the Department of Correction allowed a newsletter to be brought into correctional facilities and circulated. The October issue of the newsletter defamed Plaintiff by stating she faked her workers' compensation injury had oral sex with one of the supervisors. Exhibit 1: Newsletter. There were other newsletters circulated at HCC and other institutions which spouted racist and sexually harassing commentary. Trainor dep. By October 2001, the Department of Correction was aware that newsletters had previously easily entered and been circulated. CHRO Report, p. 51. The DOC failed to take effective measures to ensure that such newsletters were not brought into the facility by staff. DOC did not begin its investigation into the authorship of the newsletter until almost three months after it appeared. Id. Almost five months after it appeared, DOC sent a letter to all employees about the letter. Id.

No other issue of the newsletter appeared after Plaintiff filed a complaint with the CHRO. The DOC failed to investigate the newsletter's author's identity in failing to investigate his statement, "Despite transfer and having to trust someone to drop this of at the alustrious [sic] H.C.C. [Hartford Correctional Center]. Exhibit 1.

As a result of the sexually hostile work environment, plaintiff suffers and continues to suffer emotional distress. Trainor Affidavit ¶22.

### III.    SUMMARY JUDGMENT

"Summary judgment is a procedural device that may be used effectively to bring meritless litigation quickly to an end. Its application depends upon a showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a mater of law." <u>Gibson v. American Broadcasting Companies, Inc.</u> 892 F.2d 128, 1132 (2d Cir 1989)(internal quotation marks and citations omitted). "[S]ummary judgment will not lie if a dispute about a material fact is 'genuine', that is, if the evidence

is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505,2510 (1986). "In ruling on a motion for summary judgment, a court must resolve all ambiguities and inferences from the underlying facts in favor of the non-moving party." Levin v. Analysis & Technology, Inc., 960 F.2d 314, 316 (2d Cir 1992). "Uncertainty as to the true state of any material fact defeats the motion." Gibson, supra at 1132. Plaintiff maintains that the sexual harassment at DOC was pervasive and that sexually offensive conduct and comments were condoned. DOC culture deterred female employees from reporting such conduct. Even defamatory, sexually explicit and offensive publications, authored by DOC employees, were allowed to circulate at DOC facilities. As such there are genuine issues of material fact and the Court should deny the defendant's motion.

**IV.   ARGUMENT**

Plaintiff has established a sufficient claim for hostile environment sexual harassment in that (1) the comments and conduct of DOC employees were continuous; (2) at least one incident was extraordinarily severe and; (3) the incidents altered the terms and conditions of Plaintiff's employment.

A.   <u>Sexually harassing conduct at DOC facilities is continuous and pervasive.</u>

"A hostile environment claim will succeed only where the conduct at issue is so severe or pervasive as to create an objectively hostile or abusive work environment and the victim subjectively perceives the environment to be abusive." Richardson v. New York State Department of Correction Services, 180 F.3d 426,436 (2d Cir. 1999). Discipline meted out to plaintiff after her involvement with a superior officer, the circulation of the newsletter and the offensive touching and comments from CO Baker, CO Jalbert and CO Waterman created an objectively hostile work environment. Additionally, the legislature's Labor Committee held public hearings on sexual

harassment at DOC after many female DOC employees went public with their stories of sexual harassment. In August of 2002, female DOC employees filed suit in federal court against the DOC.

In the fall of 2002, CHRO conducted a fact-finding hearing. The agency heard over twenty hours of testimony from over 30 witnesses and received numerous exhibits. As a result of the testimony taken before the Labor Committee and CHRO's own fact-finding hearings, CHRO concluded that sexual harassment was pervasive at DOC facilities. Therefore, there is sufficient evidence of an objectively hostile environment. There is also sufficient evidence that the plaintiff perceived the environment as hostile.

B.  The conduct of DOC employees was extraordinarily severe.

A showing of a hostile work environment based on gender requires the plaintiff "[to] show that a single incident was extraordinarily severe, or that a series of 5 incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." Howley v. Town of Stratford, 217 F.3d 141,153 (2d Cir. 2001) quoting Cruz v. Coach Stores. Inc., 202 F.3d 560, 570 (2d Cir 2002). "Although a continuing pattern of hostile or abusive behavior is ordinarily required to establish a hostile environment, a single instance can suffice when it is sufficiently egregious." Feris v. Delta Air Lines. Inc., 277 F.3d 128, 136 (2d Cir 2001). Failing to prevent the circulation of a defamatory and sexually offensive newsletter with commentary about Plaintiff was extraordinarily severe.

Before October 2001, Warden Murphy was aware that other sexually and racially offensive newsletters had circulated at Hartford Correctional Center. However, no measures were established to prevent a correctional officer from bringing unauthorized newsletters into the facility or from distributing them. The October newsletter defamed Plaintiff's ability to withstand the stress of correctional work and imputed sexually

immoral behavior to her. Plaintiff was the only female subject of the newsletter. The newsletter was widely circulated.

In Howley, the court found similar conduct constituted hostile environment sexual harassment: Although Holdsworth made his obscene comments only on one occasion, the evidence is that he did so at length, loudly and in a large group in which Howley [the plaintiff] was the only female. . . And his verbal assault included charges Howley had gained her office of lieutenant only by performing fellatio. Howley at 154.

The circulation of the newsletter is more egregious than the defendant's conduct in Howley. The newsletter could be read over and over. It reached correctional officers, and perhaps inmates, in more than one correctional institution. It also contained charges of fellatio and incompetence. Although the publication of the newsletter could be considered one occasion, its distribution constituted a continuous, extreme commentary. Therefore, the distribution of the newsletter was extraordinarily severe and actionable under the theory of hostile work environment sexual harassment.

C.  <u>The hostile environment affected plaintiffs terms and conditions of employment.</u>

Between 1994 and 2001, CO Dennis Jalbert frequently engaged in touching of the plaintiff and other female correctional officers. During the same time period, CO Baker attempted to and succeeded in touching the intimate parts of the plaintiff. The conditions of the employment changed in that plaintiff used to ask CO Walter King to be present in the supply area when Baker was coming into that area. Plaintiff was also discouraged from filing written complaints about fellow officers' conduct toward her. In addition, plaintiff was told be several correctional officers that if she caused trouble, officers would not respond to her emergency calls if she were attacked by an inmate.

The CHRO report concluded that the DOC has failed to adequately discipline individuals for sexual harassment. The report also concluded that the DOC retaliated

against victims for reporting sexual harassment. Furthermore, the report concluded that written reports are designed for uses other than capturing the allegation of sexual harassment. Finally, the CHRO found that certain allegations are not investigated if they constitute criminal activity. The DOC had threatened to discipline complainant for failing to report harassment on the date it occurred, and by conducting an independent investigation of the victim.

It's clear then that the hostile environment affected the terms and conditions of her employment. "A hostile work environment claim requires a showing [1] that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment and [2] that a specific basis exists for imputing the objectionable conduct to the employer." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (internal citations and quotation marks omitted) Ferris v. Delta Airlines, Inc., 277 F.3d 128, 136 (2d Cir. 2001).

D.     The hostile environment may be imputed to DOC.

"Where the harassment was done by a co-employee without supervisory authority over the plaintiff, liability will be imputed to the employer if it is negligent, that is, if it either provided no reasonable avenue for complaint or knew of the harassment and did nothing about it." Ferris v. Delta Airlines, Inc., 277 F.3d 128, 136 (2d Cir. 2001).

Plaintiff could not reasonably pursue a complaint without harassment and therefore liability should be imputed to the employer. Plaintiff had previously been disciplined for a relationship with a male supervising officer. The male officer was promoted. She was reasonably afraid of retaliation for filing a complaint. Additionally, CHRO had documented such fears among female correctional officers. Plaintiff was aware that complaints may be used for disciplinary purposes against the complainant. CHRO also heard testimony about such use of complaints. Plaintiff reported Baker's

despicable comments to Captain Case, her supervisor, who told her 'that's just Big Daddy's way.' Therefore, there was no reasonable avenue for filing a complaint. Liability therefore should be imputed to DOC.

E. <u>Liability should be imputed to the employer for failing to prevent the circulation of the newsletter.</u>

"[U]nder a hostile environment theory [Plaintiff] must demonstrate some specific basis to hold he employer liable for the misconduct of the employees." <u>Karibian v. Columbia University</u>, 14 F.3d 773, 779 (2d Cir. 1994), <u>Torres v. Pisano,</u> 116 F.3d 625, 633 (2d Cir. 1997). "Lack of notice and the existence of complaint procedures do not automatically insulate an employer from liability. <u>Torres</u> at 663. Both the warden and the commissioner were aware that newsletters circulated freely at the institutions. The newsletter containing Plaintiffs name was more than insulting and offensive. . . it was defamatory. DOC did not begin to investigate authorship of the letter until three months after it appeared. Not until almost five months after its appearance did DOC send a letter to all employees about the newsletter. After the appearance of earlier sexually and racially offensive newsletters, staff were not regularly searched, when reporting for duty, for possession of such material. There is a specific basis, therefore, for imputing the conduct of DOC employees to the employer.[1]

v. **CONCLUSION**

Based on the foregoing, the Court should deny the Defendant's motion.

The Plaintiff<br>
By her attorneys

---

[1] It is beyond dispute that a DOC employee or employees authored the newsletters based on the degree of familiarity with the staff and personnel matters involving staff contained in the articles.

_____
Kevin A. Randolph (ctl5547)
57 Pratt Street, Suite 813
Hartford, CT 06103
Tel. (860) 522-7004
Fax (860) 522-9009
RandolphKAR@aol.com


_____
William H. Paetzold (ct10074)
Morarity, Paetzold & Babcock, LLC
140 Hebron Avenue, Suite 102
Glastonbury, CT 06033
Tel. (860) 657-1010
Fax (860) 657-1011